1  Michael J. Nader, SBN 200425
   michael.nader@ogletree.com
2  Paul M. Smith, SBN 306644
   paul.smith@ogletree.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  500 Capitol Mall, Suite 2500
   Sacramento, CA  95814
5  Telephone:  916-840-3150
   Facsimile:   916-840-3159
6
7  Attorneys for Defendants CLEAN HARBORS
   ENVIRONMENTAL SERVICES, INC. and
   HYDROCHEM, LLC
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Erick Plaza Villamar, an individual and class representative on behalf of himself and all other similarly situated non-exempt former and current employees<br><br>Plaintiff,<br><br>v.<br><br>CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a Massachusetts Corporation; HYDROCHEM, LLC DBA HYDROCHEMPSC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive<br><br>Defendants. | Case No.<br><br>**DEFENDANTS CLEAN HARBORS ENVIRONMENTAL SERVICES, INC. AND HYDROCHEM LLC'S NOTICE OF REMOVAL PURSUANT TO CLASS ACTION FAIRNESS ACT**<br><br>[Filed concurrently herewith Civil Cover Sheet; Declaration of Timothy L. Gaudet; Corporate Disclosure Statement and Certification of Interested Parties]<br><br>Complaint Filed:  5/4/2022<br>Trial Date:          None Set |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendants Clean Harbors Environmental Services, Inc. ("Clean Harbors") and Hydrochem, LLC ("Hydrochem," collectively, "Defendants") hereby remove the above-captioned case from the Los Angeles County Superior Court, Case No. 22STCV14726 (hereafter the "State Court Action") to the United States District Court for the Central District of California. No Defendant opposes this action. Removal is proper under CAFA for the reasons provided below.

## I.  THE STATE COURT ACTION

1. On May 4, 2022, Plaintiff Erick Plaza Villamar ("Plaintiff") filed an action entitled "*ERICK PLAZA VILLAMAR, an individual and class representative on behalf of himself and all other similarly situated non-exempt former and current employees vs. CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a Massachusetts Corporation; HYDROCHEM, LLC DBA HYDROCHEMPSC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive"* in Los Angeles County Superior Court, Case Number 22SSTCV14726.

2. On May 10, 2022, Defendants Clean Harbors and Hydrochem received service of the Summons and Complaint through their registered agents for service of process. These documents were the initial pleadings received by Defendants setting forth the claims upon which this action is based. True and correct copies of these documents, along with all pleadings, process, and other documents Defendants received in this action are attached hereto as **Exhibit A**.

3. In the Complaint, Plaintiff asserts the following causes of action: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wage; (5)

Failure to Timely Pay Wages; (6) Failure to Pay All Wages Due to Discharged and Quitting Employees; (7) Failure to Maintain Required Records; (8) Failure to Furnish Accurate Itemized Wage Statements; (9) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; and (10) Unfair and Unlawful Business Practices.

## II.   REMOVAL IS TIMELY

4. A defendant in a civil action has thirty days from the date on which it is validly served with a summons and complaint to remove the action to federal court. 28 U.S.C. § 1446(b) ("[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable"); *See also, Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.")

5. As set forth in Paragraph 2, service of the Summons and Complaint on Defendants was effective on May 10, 2022 when Plaintiff completed service on Defendants' respective registered agents. Because Defendants now file this removal within thirty days of service of the Summons and Complaint, removal is timely.

## III.   GROUNDS FOR REMOVAL

6. Defendants are authorized to remove this action to the United States District Court for the Central District of California pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711 ("CAFA"). As stated herein, Plaintiff has filed a class action complaint involving at least 100 class members, the amount in controversy exceeds five million dollars, and minimal diversity exists because Defendants are citizens of different states from Plaintiff.

///
///

**A.    Plaintiff Brings This Case as a Class Action against Defendants**

7.    Plaintiff's Complaint is titled CLASS ACTION COMPLAINT FOR: (1) FAILURE TO PROVIDE REQUIRED MEAL PERIODS; (2) FAILURE TO PROVIDE REQUIRED REST PERIODS; (3) FAILURE TO PAY OVERTIME WAGES; (4) FAILURE TO PAY MINIMUM WAGE; (5) FAILURE TO TIMELY PAY WAGES; (6) FAILURE TO PAY ALL WAGES DUE TO DISCHARGED AND QUITTING EMPLOYEES; (7) FAILURE TO MAINTAIN REQUIRED RECORDS; (8) FAILURE TO FURNISH ACCURATE ITEMIZED STATEMENTS; (9) FAILURE TO INDEMNIFY EMPLOYEES FOR NECESSARY EXPENDITURES INCURRED IN DISCHARGE OF DUTIES; UNFAIR AND UNLAWFUL BUSINESS PRACTICES." (See Complaint, Caption.)

8.    Plaintiff's Complaint alleges that Plaintiff brings this action as a "class representative on behalf of himself and all other similarly situated non-exempt former and current employees." (See Complaint, Caption.)

9.    Plaintiff further identifies the classes he seeks to represent, which is defined as follows: "All current and former non-exempt employees of DEFENDANTS who worked at any locations in the State of California at any time within the period beginning four (4) years prior to the filing of this action, and ending at the time this action settles or proceeds to final judgment…" (Complaint ¶ 5.)

10.    Plaintiff's Complaint asserts all ten causes of action on behalf of himself and the putative class. Defendants deny liability as to Plaintiff's individual and class claims, and will present compelling defenses to these claims on the merits. Defendants intend to oppose class certification and reserve all rights in this regard. However, for purposes of the jurisdictional requirements of removal only, Defendants note that, as set forth in more detail below, the allegations in Plaintiff's Complaint, including in particular that he seeks to represent all current and former non-exempt employees of Clean Harbors and Hydrochem who worked at any location in the State of California from four (4) years prior to the filing of this action (May 4, 2018) to judgment, puts in

controversy an amount that easily exceeds five million dollars ($5,000,000). (28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs).

### B. There are More Than 100 Members in the Proposed Class

11. Pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of the statute, the action involves a putative class of at least 100 persons, this Court has original jurisdiction.

12. Plaintiff alleges that this action is brought on behalf of all current and former non-exempt employees of Defendants who worked at any location in the State of California beginning four years prior to the filing of the Complaint through judgment (May 4, 2018 and forward). (Complaint ¶ 5.)

13. According to Hydrochem's records, Hydrochem employed an average of more than 525 non-exempt hourly paid employees per month in California during the period beginning May 4, 2018 to the present. At its peak, Hydrochem employed more than 630 non-exempt hourly paid employees in California during this time period. According to Hydrochem's records, these non-exempt hourly paid California employees were paid an average hourly wage equal to $24.89 per hour. (Declaration of Timothy L. Gaudet in Support of Defendants' Notice of Removal ("Gaudet Decl.") ¶ 10.)

14. Although Defendants deny that class treatment is appropriate, Plaintiff's proposed class, as pled, and if certified, would consist of more than 100 members.

### C. Clean Harbors is a Citizen of a Different State than Plaintiff

15. Pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of the statute, a member of the class is a citizen of a state different from any defendant, this Court has original jurisdiction.

16. A person is a "citizen" of the state in which they are domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("*Kanter*"). A person's

domicile is the place they reside and intend to remain or which they intend to return. *Id*.

17. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court explained that the proper test for determining a corporation's principal place of business, is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 91-93 (2010). The Supreme Court further clarified that the corporation's principal place of business is where it "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id*.

18. Defendant Clean Harbors was, as of the filing of this action and, remains today, a corporation incorporated under the laws of Massachusetts. (Gaudet Decl ¶ 6.) Clean Harbors' principal place of business is Massachusetts. *Id*. Clean Harbors' executive and administrative operations are managed from its Massachusetts headquarters. *Id*. And Clean Harbors' executive officers, including its Chief Executive Officer, Chief Financial Officer, Secretary, General Counsel, and certain other executive leaders maintain their offices at Clean Harbors' office in Massachusetts, where it makes and implements company-wide operating, financial and accounting, employee relations, and other policy decisions. *Id*. at ¶ 6-7. Simply put, Clean Harbors' center of "direction, control, and coordination" is located in the State of Massachusetts and therefore its principal place of business is Massachusetts.

19. Accordingly, Clean Harbors is a citizen of Massachusetts.

D. **Hydrochem is a Citizen of a Different State than Plaintiff**

20. Although not needed for removal, it is worth noting that Hydrochem is also a citizen of a different state than Plaintiff.

21. Under CAFA, the citizenship of an unincorporated association is the determined by the States under which it is incorporated and in which it maintains its

1  principal place of business. 28 U.S.C. § 1332(d)(1) ("For purposes of this subsection
2  and section 1453, an unincorporated association shall be deemed to be a citizen of the
3  State where it has its principal place of business and the State under whose laws it is
4  organized."

5      22.   Hydrochem is Delaware Limited Liability Company with its principal
6  place of business in Norwell, Massachusetts. (Gaudet Decl. ¶ 8.)

7      23.   Accordingly, Hydrochem is a citizen of the States of Delaware and
8  Massachusetts. This has been true as of the time of Plaintiff's filing of this action and
9  remains true today. *Id*.

    **E.  Plaintiff is a Citizen of California**

11      24.   Citizenship of a natural person is established by domicile. *Kanter, supra*,
12  265 F.3d at 857 (9th Cir. 2001). A person's domicile is established by physical
13  presence and an intent to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 749-750 (9th
14  Cir. 1986).

15      25.   According to the Complaint, Plaintiff is a resident of California who was
16  employed by Defendants in California. These allegations are *prima facie* evidence of
17  domicile, which create a rebuttable presumption sufficient to support removal. *Lew v.
18  Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court
19  complaint create rebuttable presumption of domicile). Additionally, Plaintiff's
20  personnel and wage records indicate that he most recently lived and worked in
21  California. (Gaudet Decl. ¶ 4.) For purposes of removal then, Plaintiff is a citizen of
22  the State of California.

    **F.  The Citizenship of Doe Defendants is Irrelevant**

24      26.   "For purposes of removal… the citizenship of defendants sued under
25  fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "Doe"
26  defendants in a state court complaint has no effect on removability. *Newcombe v. Adolf
27  Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether
28  diversity of citizenship exists, only the named defendants are considered). Therefore,

Plaintiff's inclusion of DOES 1 through 100 in the Complaint has no effect on diversity or removal.

27. **Accordingly, Minimal Diversity Exists**. Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is, and was at all times relevant to this action, a citizen of the State of California, and Defendants are, and were at all times relevant to this action, citizens of the States of Massachusetts and Delaware. Therefore, complete diversity between Plaintiff and Defendants exists now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendants and the putative class.

## IV.   THE JURISDICTIONAL MINIMUM IS SATISFIED

28. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See,* 28 U.S.C. § 1332(d)(2).

29. Unlike other cases, there is no anti-removal presumption for cases invoking the CAFA. *Arias v. Residency Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("*Arias*").

30. Three principles apply to CAFA removals. First, a removing defendant's notice of removal "need not contain evidentiary submissions" but only plausible allegations of the jurisdictional elements. *Arias* at 922 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Id*. "Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy. *Id*. (emphasis added).

31. In assessing the amount in controversy, a removing defendant is permitted to rely on a "chain of reasoning that includes assumptions." *Arias* at 925. An assumption may be reasonable if it is founded on the allegations of the complaint. *Id*.

"[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id. at 927* (quoting *Ibarra*, 775 F.3d at 1199). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id*. (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Id*. (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them").

### A. Plaintiff States That the Amount in Controversy Exceeds $5,000,000

32. To assess the amount in controversy, "courts first look to the complaint." *Ibarra*, 775 F.3d at 1197 (9th Cir. 2015). "[T]he sum claimed by the plaintiff" generally controls "if the claim is apparently made in good faith." *Id*. (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co.* at 289.

33. Plaintiff expressly states that the amount in controversy "exceeds the sum of $75,000.00 for Plaintiff [individually], exclusive of interest and costs, and $5,000,000.00 for the putative class." (Complaint ¶ 2.) Accordingly, this case is wholly within this Court's jurisdiction under CAFA.

### B. The Amount in Controversy of Plaintiff's Claims Exceeds $5,000,000

34. Even if Plaintiff's statement concerning the amount in controversy is ignored, this Court still has jurisdiction over this matter under CAFA because Plaintiff's Claims exceed the five million dollar ($5,000,000) amount in controversy threshold, as explained below.

////

### 1. Unpaid Overtime

35. Labor Code § 510 provides that any work in excess of eight hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Labor Code § 1194(a) provides further, "Notwithstanding any agreement to work for a lesser wage, an employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation.

36. Plaintiff alleges that "DEFENDANTS failed to compensate PLAINTIFF and CLASS MEMBERS for all overtime hours worked… by, among other things: failing to pay overtime at one and one-half (1 ½) or double the regular rate of pay… requiring, permitting, or suffering PLAINTIFF and CLASS MEMBERS to work off the clock; requiring, permitting, or suffering PLAINTIFF and CLASS MEMBERS to work through meal and rest breaks; illegally and inaccurately recording time in which PLAINTIFF and CLASS MEMBERS worked; illegally rounding the work hours of PLAINTIFF and CLASS MEMBERS; failing to properly maintain PLAINTIFF'S and CLASS MEMBERS' records; … and other methods to be discovered." The Complaint alleges further that "DENFENDANTS have knowingly and willfully refused to perform their obligations to compensate PLAINTIFF and CLASS MEMBERS for all wages earned and all hours worked…" (Complaint ¶¶ 26-27.)

37. Defendants deny that they failed to pay overtime wages to Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and the putative class members were denied overtime pay. However, the Complaint states that Plaintiff and the putative class members were required to work through breaks, had time illegally rounded, and inaccurately recorded, suggesting a common and altogether common occurrence.

38. To calculate the amount in controversy, then, the Court should apply one hour of unpaid overtime wages per putative class member per workweek. *See Soto v.*

*Grief Packaging, LLC*, 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay him and the class members for all hours worked on a consistent and regular basis); *Reyes v. Carehouse Healthcare Center, LLC*, 2017 WL 2869499, at *4 (C.D. Cal. July 5, 2017) (accepting employer's estimate of one hour of unpaid overtime wages per workweek as reasonable).

39. Making an extremely conservative estimate that the putative class is only 630 employees who worked a total of 100,000 workweeks over the 4 year statutory class period, with an average hourly rate of pay of only $24, Plaintiff's unpaid overtime claim is worth at least **$3,600,000**. [100,000 x 24(*1.5)].[1]

## 2. Unpaid Meal and Rest Break Premiums

40. Plaintiff alleges that "DEFENDANTS required, permitted, or otherwise suffered PLAINTIFF and CLASS MEMBERS to take less than the 30-minute meal period, or to work through them, and have failed to otherwise provide the required meal periods to PLAINTIFF and CLASS MEMBERS." Plaintiff further alleges that DEFENDANTS failed "to compensate PLAINTIFF and CLASS MEMBERS who were not provided with a meal period, in accordance with the applicable wage order, one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." (Complaint ¶¶ 15-16.)

41. Plaintiff also alleges that "DEFENDANTS failed to provide rest periods to PLAINTIFF and CLASS MEMBERS" and failed "to pay PLAINTIFF and CLASS MEMBERS who were not provided with a rest period, in accordance with the applicable wage order, one additional hour of compensation at each employee's regular rate of pay for each workday that a rest period was not provided."

////

---

[1] Reflecting the conservative nature of this estimate, Defendants note that this analysis does not take into consideration turnover of Hydrochem employees during the four-year statutory class period or account for even one Clean Harbors employee of whom it is estimated there are more than 1,000 putative class members.

42. Defendants deny that any such violations occurred or that compensation is owed to Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and the putative class members were allegedly denied these break periods. However, the Complaint states that Plaintiff and the putative class members were required to work through breaks, had time illegally rounded, and inaccurately recorded, suggesting a common and altogether common occurrence.

43. For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's allegation that violations regularly occurred and compensation is owed. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("in determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC,* 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (citations omitted).

44. Under California law, employees who are denied the opportunity to take proper meal and rest periods are entitled to one hour of premium pay for each day that a meal period is missed and one hour of premium pay for each day that a rest period is missed, i.e., two hours of premium pay for each day that both a meal and rest period are missed. *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, at *7 (C.D. Cal. 2009). Meal and rest period claims are properly considered in determining the amount in controversy. *Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. 2007).

45. Plaintiff also alleges that the failure to provide meal and rest periods constitutes an unlawful and unfair business practice over businesses that routinely adhere to the strictures of the Labor Code. (Complaint ¶¶ 56-60.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for meal and rest break claims is based on a four-year limitations period.

46. When performing an analysis of the amount in controversy where, as here, a plaintiff alleges a regular, consistent, or routine policy or practice of violations, it is reasonable to assign a 100% violation rate. *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *3-4 (E.D. Cal. 2011) (defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods).

47. At minimum, a court should assign a violation rate of one violation per week per claim. *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016) (allegations of a systematic practices supports the "assumption that each class member missed one meal period and one rest period per week).

48. Applying just one meal period violation per workweek worked by the 630 person putative class of Hydrochem employees who worked at least 100,000 workweeks while earning $24 per hour, Plaintiff's meal break claim is worth at least **$2,400,000**. (100,000 workweeks x $24/week.)

49. Applying just one rest break violation per workweek worked by the 630 person putative class of Hydrochem employees who worked at least 100,000 workweeks while earning $24 per hour, Plaintiff's rest break claim is worth at least **$2,400,000**. (100,000 workweeks x $24/week.)

### 3. Attorneys' Fees

50. Plaintiff alleges that he is entitled to recover his attorneys' fees. (Complaint, Prayer for Relief ¶ 9). Recoverable attorneys' fees are properly included when calculating the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998) (attorneys' fees may be included in the amount in

controversy if recoverable by statute or contract).

51. Under Ninth Circuit precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17119, at *15 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases) (citations omitted).

52. Here, Defendants have shown that the claimed amount in controversy of Plaintiff's first three causes of action (out of ten) against Hydrochem alone[2] are worth at least **$8,400,000** and, Plaintiff has not indicated that he will seek less than 25% of a common fund in attorneys' fees.

53. Though Defendant denies that attorneys' fees are owed to Plaintiff or the putative class, and further reserves the right to contest the application of the 25% benchmark in this case, for purposes of this jurisdictional analysis Defendant assumes that Plaintiff can recover up to 25% of the value of the claims asserted as attorneys' fees.

54. Using the 25% benchmark figure for attorneys' fees, Plaintiff's attorneys' fees claim is worth approximately **$2,100,000.**

    **4. Estimated Total Amount in Controversy**

55. Based on the calculations provided above, which are derived from the allegations in Plaintiff's Complaint, the total amount in controversy in this action is as follows:

////

////

---

[2] To reiterate, Defendants' analysis here does not even account for Defendant Clean Harbors' workforce which is generally estimated to be in excess of 1,000 employees during the proposed class period. To the extent this court has questions about the impact of Clean Harbors' workforce on removability under CAFA, Defendants request that the Court set an Order to Show Cause hearing or request additional briefing in lieu of remand.

| Type of Damages / Claim | Estimated Amount in Controversy |
|---|---|
| Unpaid Overtime | $3,600,000+ |
| Unpaid Meal Premiums | $2,400,000+ |
| Unpaid Rest Premiums | $2,400,000+ |
| Attorneys' Fees | 2,100,000+ |
| Unpaid Minimum Wage, Untimely Payment of Wages, Untimely Payment of Final Wages, Failure to Maintain Records, Inaccurate Itemized Wage Statements, and Failure to Indemnify for Necessary Business Expenditures | TBD - |
| Total | $10,500,000+ |

56. This total does not include the amount in controversy for Plaintiff's fourth through ninth causes of action for failure to pay minimum wage, failure to timely pay wages during employment, failure to pay all wages due at time of discharge, failure to maintain required records, failure to furnish accurate itemized wage statements, and failure to indemnify employees for necessary expenditures as alleged against Hydrochem, or any cause of action asserted against Clean Harbors.

57. Accordingly, the requisite five million dollar ($5,000,000) amount in controversy threshold has been met sufficient to establish jurisdiction under CAFA in this case.

## V. DEFENDANT SATISFIED THE REQUIREMENTS OF 28 U.S.C. § 1446

58. In accordance with 28 U.S.C. § 1446(a), this notice of removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, Los Angeles County, is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

////

59. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant Hydrochem are attached hereto as **Exhibit A**.

60. In accordance with 28 U.S.C. § 1446(d), Defendants' counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Los Angeles County Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

61. As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently files its Certificate of Interested Parties with this filing of the Notice of Removal.

## VI. CONCLUSION

62. For the foregoing reasons, Defendant Hydrochem hereby remove the above-entitled action to the United States District Court for the Central District of California. Defendant Clean Harbors does not oppose Removal. In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendants request that this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED: June 9, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Michael J. Nader*
Michael J. Nader
Paul M. Smith
Attorneys for Defendants CLEAN HARBORS ENVIRONMENTAL SERVICES, INC. and HYDROCHEM, LLC